IN THE UNITED STATES DISTRICT OF TEXAS
SOUTHERN DISTRICT OF TEXAS
McALLEN DIVISION

| | | |
|---|---|---|
| CATALINA ZUNIGA HERRERA, INDIVIDUALLY, DANIELLE SAENZ AS THE REPRESENTATIVE OF THE ESTATE OF JORGE ALEJANDRO ZUNIGA GONZALEZ DECEASED AND JOHANA ACUNA ACOSTA, INDVIDUALLY AND AS NEXT FRIEND FOR J.A.G., *a minor*, | § § § § § § § § | CIVIL ACTION NO. 7:20-cv-257 JURY TRIAL REQUESTED |
| *Plaintiffs,* | § § | |
| | § | |
| VS. | § § | |
| STEVEN FARIAS, MARCO GUERRERO, JORGE CABRERA AND JULIO TREVINO | § § § | |
| *Defendants*. | | |

CONSOLIDATED WITH

| | | |
|---|---|---|
| JORGE LUIS GONZALEZ SOTO, INDIVIDUALLY AND AS THE REPRESENTATIVE OF THE ESTATE OF JORGE ALEJANDRO ZUNIGA GONZALEZ DECEASED | § § § § § | CIVIL ACTION NO. 7:21-cv-133 JURY TRIAL REQUESTED |
| *Plaintiffs,* | § § | |
| | § | |
| VS. | § § | |
| STEVEN FARIAS, MARCO GUERRERO, JOHN DOE I AND JOHN DOE II | § § | |
| *Defendants*. | § | |

1

**EXHIBIT A**

## <u>PLAINTIFFS' FIFTH AMENDED COMPLAINT</u>

**TO THE HONORABLE UNITED STATES DISTRICT JUDGE RICARDO HINOJOSA:**

**NOW COME** Plaintiffs, *Catalina Zuniga Herrera*, *Individually, Danielle Saenz as Representative of the Estate of Jorge Alejandro Zuniga Gonzalez deceased, and Johana Acuna Acosta individually and as next friend for J.A.G.,* and presents this their *Plaintiffs' Fifth Amended Complaint,* bringing this action against County Sheriffs' Deputies Steven Farias, Deputy Marco Guerrero, Deputy Jorge Cabrera, Deputy Julio Trevino, *Individually*, Anita Mancha LVN, Elda Rodriguez LVN and Hidalgo County, complaining that said Defendants, jointly and severally, denied Plaintiff Jorge Alejandro Zuniga Gonzalez his rights as guaranteed by the Constitution and laws of the United States of America and the State of Texas, and said violations led to his horrific injuries and ultimately his death. In support thereof, Plaintiffs would respectfully show the following:

## I.
## <u>JURISDICTION AND VENUE</u>

This action is brought pursuant to 42 U.S.C. § 1983 and this court has jurisdiction pursuant to 28 U.S.C. § 1331 (federal question) and 28 U.S.C. § 1343(a)(3) (civil rights). Venue is proper in the Southern District of Texas, McAllen Division, as this is the district where the claim arose in accordance with 29 U.S.C. § 1391(b). Plaintiff Catalina Zuniga Herrera brings this action individually as the decedent's mother, entitled to recover damages arising from decedent's wrongful death pursuant to TEX. CIV. PRAC. & REM. CODE §§ 71.000 et seq. and as applied through 42 U.S.C. § 1983. Plaintiff Danielle Saenz on behalf of Jorge Gonzalez as the representative of the estate of Jorge Gonzalez, entitled to recover damages arising from

decedent's wrongful death pursuant to TEX. CIV. PRAC. & REM. CODE §§ 71.000 et seq. and as applied through 42 U.S.C. § 1983. Plaintiff Johana Acuna Acosta brings this action as the wife of Jorge Gonzalez and the mother and next friend of Jorge Gonzalez's child J.A.G. both of whom are entitled to recover damages arising from decedent's wrongful death pursuant to TEX. CIV. PRAC. & REM. CODE §§ 71.000 et seq. and as applied through 42 U.S.C. § 1983.

This action is brought due to the brutal, unreasonable and excessive force applied to Mr. Gonzalez during his arrest on April 12, 2020 at the hands of Hidalgo County Sheriffs' deputies which resulted in him suffering a crushed vertebrae in his neck. Then, despite the obvious nature of his injuries, due to the deliberate indifference of the personnel at the Hidalgo County Adult Detention Center, they failed to address his health care needs and to provide him the care he was entitled to under the US Constitution. The end result was Mr. Gonzalez was rendered a quadriplegic unable to move his arms or his legs. He was in this state until his injuries overcame him and he died three months later on July 15, 2020.

## II.
## PARTIES

1.      Plaintiff Catalina Zuniga Herrera was the mother of Jorge Gonzalez and is a resident of Hidalgo County, Texas. She is suing in her individual capacity.

2.      Danielle Saenz is a resident of Hidalgo County, Texas and she is suing as the representative of the estate of Jorge Gonzalez.

3.      The Plaintiff and now deceased Jorge Gonzalez was a resident of Hidalgo County, Texas.

4.      The Plaintiff Johana Acosta is the wife of Jorge Gonzalez and the parent of J.A.G. and is a resident of Hidalgo County. She is suing in her individual capacity and as the next friend of J.A.G..

3

5.      The minor child J.A.G. is the child of Jorge Gonzalez and is a resident of Hidalgo County.

6.      Defendant, Deputy Steven Farias, is an individual residing in Hidalgo County, Texas and has been served with process and all amended pleadings may be served through his attorney of record, David Willis at David Willis, PC 1534 E. 6th Street, Suite 201 Brownsville, Texas 78520.

7.      Defendant, Deputy Jorge Cabrera, is an individual residing in Hidalgo County, Texas and has been served with process and all amended pleadings may be served through his attorney of record, Raymond L. Thomas RAYMOND THOMAS, P.C. 4900-B North 10th Street McAllen, Texas 78504.

8.      Defendant, Deputy Julio Trevino, is an individual residing in Hidalgo County, Texas and has been served with process and all amended pleadings may be served through his attorney of record, Michael McGurk Walsh McGurk Cordova Nixon, PLLC 1506 S. Lone Star Way, Ste. 10  Edinburg, Texas 78539.

9.      Defendant, Deputy Marco Guerrero, is an individual residing in Hidalgo County, Texas and has been served with process and all amended pleadings may be served through his attorney of record, Marissa Hernandez at Marissa Anna Carranza Hernandez Attorney at Law PLLC 104 W. Polk Avenue Pharr, Texas 78577.

10.      Defendant Anita Mancha LVN is an individual residing in Hidalgo County, Texas and has been served with process and all amended pleadings may be served through her attorney of record, Lara Price  909 Fannin Street, Suite 2500 Houston, Texas 77010.

11.      Defendant Elda Rodriguez LVN is an individual residing in Hidalgo County,

Texas and has been served with process and all amended pleadings may be served through her attorney of record, Lara Price  909 Fannin Street, Suite 2500 Houston, Texas 77010.

12.     Defendant, HIDALGO COUNTY, is a political subdivision of the State of Texas whose status and authority are derived from the Constitution of Texas and laws passed by the Texas Legislature. Defendant HIDALGO COUNTY has been served with process and all amended pleadings may be served  through its attorney of record, Preston Henrichson HENRICHSON LAW PLLC 222 West Cano  Edinburg, Texas 78539.

### III.
### STATEMENT OF FACTS

13.     In the Spring of 2020, Jorge Gonzalez was a twenty-two (22) year old husband and the father of a one-year-old child. On April 11, 2020 Mr.  Gonzalez was at a friend's house in a trailer park celebrating Easter with a barbeque. Mr. Gonzalez stayed at his friend's house until the early morning hours of April 12, 2020.

14.     At some point during the evening some women, unrelated to Mr. Gonzalez and not part of the party he was attending, but who lived in another part of the trailer park, got into an altercation. Neither Mr. Gonzalez nor anyone at his barbeque were involved in this altercation.

15.     The Sheriff's Department was called to address this unrelated altercation and three Sheriff's deputies from the Hidalgo County Sheriff's Department arrived; Deputies Farias, Cabrera and Trevino.

16.     When the Sheriff's deputies arrived, Mr. Gonzalez was asleep in the yard of his friend's house. The deputies approached Mr. Gonzalez and when they discovered he lived elsewhere they told him to go home.

17.     Mr. Gonzalez followed their commands and started to go home when the officers

decided to arrest him for violating the emergency management order and public intoxication; two minor, non-violent misdemeanors.  These charges were ultimately dropped and dismissed.

18.     During the course of the arrest the deputies tackled and assaulted Mr. Gonzalez. He was tazed multiple times, pushed to the ground, had his neck crushed, was handcuffed and placed in ankle restraints. At one point he was intentionally tripped and when he would not get up while still fully shackled, he was tazed. Ultimately, he was pulled in the patrol car and transported directly to the Hidalgo County Adult Detention Center.

19.     The arrest took place on April 12, 2020 at 2:15 am. Although three Deputies including Deputy Farias, Deputy Cabrera and Deputy Trevino were all involved in the arrest itself, the documentation reflects the arresting officer as Deputy Steven Farias.

20.     Dash cam video of the arrest reveals that after Mr. Zuniga was handcuffed and shackled he could walk and is seen physically walking. His hands are behind his back and he is being escorted by two deputies. Following this he and the deputies go off camera for approximately two minutes. When Mr. Zuniga is next seen on video it is on the camera filming the back seat of Deputy Farias' patrol car. At this point he can no longer walk  and is physically drug into the back seat of the patrol car.

21.     An eyewitness who saw the arrest watched what was occurring while Mr. Zuniga was off camera. This witness saw the deputies trip Mr. Zuniga and he fell head first into the ground with enough force to become unconscious. He laid there unconscious until he was tazed by the deputies to wake him up.

22.     Mr. Gonzalez was transported directly to the detention center and he was not given a medical evaluation to determine the extent of his injuries. A suicide evaluation of Mr. Gonzalez took place on April 12, 2020 at 2:57 a.m. by Deputy Marco Guerrero. At no time does he make

reference to or acknowledge the obvious injuries suffered by Mr. Gonzalez.

23.     At the time of his arrest and during his transport Mr. Gonzalez repeatedly stated that he was paralyzed, that his neck was hurting and that he was "f***ked up." On tape while he is being dragged into the patrol car Mr. Zuniga is telling the officers "you f**king paralyzed me" and "I'm paralyzed". He tells them this over and over while they are dragging him into the patrol car and telling him to move his legs which he cannot do. He is told to roll over on his side and tells the deputies that he can't. During the transport to the jail by Deputy Farias Mr. Zuniga is heard moaning and asking for help. Mr. Zuniga tells Deputy Farias his neck is injured. Despite this and with full knowledge of all that happened during the arrest, Deputy Farias did not take Mr. Zuniga to a hospital for a medical evaluation and instead took him directly to the jail. Deputy Farias tells those at the jail that he is bringing in a "rowdy" but he does not tell them Mr. Zuniga was injured or complaining of being paralyzed. There was no department policy that instructed him to tell them of these injuries.

24.     When Mr. Gonzalez was brought to the jail and not instead taken for medical attention, this was in compliance with the policies and procedures established by the top policy maker of Hidalgo County, the County Sheriff J.E. "Eddie" Guerra. It was the policy of the county that unless the person in custody specifically requested to be brought to a hospital, he would be sent directly to jail. This was the policy even if the person had been in an altercation with the deputies, had fallen, had been tazed, could not walk or was complaining of pain or other injury. That policy has now been changed.

25.     When Mr. Gonzalez was brought to the jail he was met with a team of deputies after being labeled a hostile inmate, a "rowdy". He was drug out of the patrol car by multiple dentition officers. These officers told Mr. Zuniga to get up and they witnessed that he never

stood up or moved his legs. They assumed he was being uncooperative and could stand up but just would not. He was put into a room next to the booking under the direction of the supervisor Sgt. Cynthia Casanova who filmed the encounter. All that happened at this point was done at the direction of Sgt. Casanova.

26.    Mr. Zuniga was carried into the room where he was searched and his shoes were removed. At no point did he stand up. A spit bag (called a spit mask) was placed over his head. During this entire process Mr. Zuniga is told to stand up but neve does. Sgt. Casanova asks the deputies if he can stand up showing she had concern over his physical ability to do so. Despite this she does nothing and ignores his injuries. The detention officers try to stand Mr. Zuniga up and he is unable to do so. Again, Sgt. Casanova asks "he can't stand up". Mr. Zuniga is listless and shows no physical movement.

27. Sgt. Casanova made the determination to place Mr. Gonzalez in a restraint chair. Pursuant to the Hidalgo County policy, the LVN Anita Mancha was called to give "medical clearance" for the placement in the restraint chair.   Pursuant to the policy, this "medical clearance" was limited to checking the arm restraints. This medical clearance was not an examination for other injuries.

28.    At the time Mr. Gonzalez was placed in the restraint chair he stated on multiple occasions that his neck hurt, that he was "f**ked up" and screamed in obvious pain. LVN Mancha and the dentition officers, including Sgt. Casanova ignored these pleas and failed to provide him any medical care.  At one point, an officer bends Mr. Zuniga forward and presses down on his neck. He screams in pain. Despite this, he is cleared to be placed in the restraint chair.

29.    At this point the defendant deputies, detention officers and the LVN Mancha all

witnessed or heard Mr. Zuniga, not being able to move his legs, not being able to stand up, yelling that he was paralyzed, yelling that he was f**ked up, yelling that "they f**ked me up, screaming when his neck is pressed down, moaning in agony, having abrasions on his face and eyes and having no strength in his body. Despite this knowledge and these obvious cries and signs of serious injury not one person, including the LVN, made any effort to provide Mr. Zuinga medical attention or evaluation. Instead, each of these Defendants ignored his obvious signs of injury and need for medical attention. They acted with deliberate indifference despite their objective and subjective knowledge of serious injury and his need for medical care. These injuries were obvious, and apparent as shown on the video, that even detention officers with no medical training and certainly an LVN with medical training would know that Mr. Zuinga was seriously injured and in need of medical care. Not only did he show them with his actions, he plainly told them he was injured, but nothing was done to address these injuries or provide constitutionally mandated medical care.

30.    Mr. Gonzalez was placed in the restraint chair where he was kept for over 6 hours. He was placed on a fifteen- or thirty-minute watch where he was to be evaluated. These evaluations did not happen. The policy required that he be given leg and arm exercises every hour. These did not occur. During this six hours, Mr. Zuniga never moved, and other than an aspirin, was never given any medical attention.

31.    At approximately 9:00 am in the morning, Mr. Gonzalez was removed from the restraint chair. At that time, he had vomited upon himself and the detention officers were instructed to provide him a shower. While in the process Mr. Gonzalez complained that he could not move his legs, that he could not stand up and was weak. He had to be showered in the restraint chair and dressed by the officers.  LVN Rodriguez was called to evaluate him because

he was complaining of pain and was aware of his condition. Neither she nor the detention officers provided him any medical care or send him out for medical evaluation. Instead, consistent with Hidalgo County policy, he was placed in a holding cell where he stayed until approximately 11:00 pm.

32.     Pursuant to the policy of Hidalgo County, Mr. Gonzalez was to be observed every thirty minutes. He was consistently found to be not moving and failed to eat any of the food that was brought to him. However, because he never specifcailly requested medical attention, pursuant to the Hidalgo County policy, he was not provided any medical care. Further, despite his obvious injuries and cries for help at the time he was brought in, the Hidalgo County policy did not require the LVNs on staff to observe him while he was in the holding cell. As a result, he was not provided any medical care or sent out for medical evaluation.

33.     To be clear over the course of twenty plus hours the deputies, detention officers, Sgt. Casanova, and the LVNs all knew that Mr. Zuniga had been in an altercation with the deputies during the arrest, he had been tripped and forced to the ground, he was initially able to walk and then was not able to walk, he was complaining that he was paralyzed, he said he was "f**ked up", he said that "they f**ked me up", he never moved his legs or stood up despite being told to, he had to be dragged into and out of the patrol car, he screamed in pain when his neck was pressed, he moaned in agony, he sat motionless in a restraint chair for six hours, he threw up on himself, he said his legs were weak and he could not stand from the restraint chair, he was showered sitting in the restraint chair, he complained of pain, he laid motionless for hours in a cell, and he did not touch his food that was given to him.  Despite these cries for help, complaints of injury and obvious signs of serious injury at no time did anyone seek medical care for him or send him out to be evaluated. Instead, his obvious serious injuries and the need for

10

medical care, from both an objective and subjective viewpoint, and with full knowledge of all described herein, these Defendants acted with intentional indifference and refused to provide Mr. Zuniga any medical care. As a direct result of these injuries and the delay in receiving treatment Mr. Zuinga's injuries became more severe and he was ultimately paralyzed from the neck down.  This could have been avoided if treatment had been received earlier.

34.     Finally, at or near 12:11 am on April 13, 2020, some twenty-two (22) hours after his arrest and twenty-one (21) hours after his booking, someone at the jail checked on him by actually going into his cell. The previous observations to the extend they occurred were conducted by peering through a window in the door. During these observations the note was made that Mr. Zuniga was not moving and had not moved for hours. When this 12:11 observation took place, he was found to be non-responsive.

35.     Because his booking had not been completed the night before, Mr. Gonzalez was booked into the detention center on April 13.  At no time prior to this booking was he adequately evaluated by proper medical personnel.  Below are the photos taken at the time of the booking:





36.     At the time Mr. Gonzalez's mug shot was taken, he is unable to hold his head up and has to be assisted by the deputies. These obvious injuries, including a large swollen neck, cuts and contusions were present the night prior and for hours before this mug shot was taken, yet the jail officials acted with deliberate indifference and at no time sent Mr. Gonzalez for medical evaluation or treatment. Instead, he was thrown into the "drunk tank" and left alone.

37.     On April 13, 2020 at 12:11 a.m. the jail *FINALLY* called EMS to transport him to the hospital and get the medical care he had desperately needed but which was denied due to the absolute deliberate and unconscionable indifference of the deputies and the jail staff. To a person, they all used the discretion that the Sheriff's policies gave them to ignore his cries for help and his obvious signs of serious injury and not provide him medical care.

38.     The policies and practices as established and known at the Hidalgo County Sheriff's office allowed detention officers and supervisors to ignore a detainee's complaints of injury and use their discretion to not believe them and not seek medical help. Without any

medical training, they were allowed to access the detainee and the circumstances and make the decision not to call in medical personnel or send the person out for medical evaluation. This discretion allowed obvious signs and complaints of serious injury to be ignored.

39.    When the EMS personnel arrived, Mr. Gonzalez was found to have a hyperextended neck, a swollen neck, he was hypothermic, bradycardic and suffering other obvious injuries.

40.    At the hospital, (first the McAllen Heart Hospital and then the McAllen Medical Center), Mr. Gonzalez was found to have hematomas on his left eye, right chest, upper arm and nose; he had a laceration on his left finger; he had a deformity of his right elbow; he had a deformity of his neck; he complained of neck pain; he was bradycardic and he was hypothermic (his temperature was 82.4 degrees). He was diagnosed with a severe cervical fracture, a swollen spinal cord and was a quadriplegic.

41.    Specifically, he was found to have: Rhabdomyolsis (breakdown of damaged skeletal muscle); a 9mm anterolisthesis at C5-C6 in his neck (meaning his two vertebrae have been pushed over each other); bilateral jumped facet bones in his neck; bilateral laminar fractures in his neck and paralysis from his neck down.

42.    Mr. Gonzalez was hospitalized until June 5, 2020. During the course of his hospital stay he underwent multiple surgeries and due to his paralysis he was on a ventilator to enable him to breathe.

43.    Mr. Gonzalez underwent two cervical surgeries where plates and screws were placed in his neck in an attempt to stabilize his spine. During the course of these surgeries his neck injuries were described as: a contusion from his skin to his spinal cord; severe spinal cord compression; marked swelling of his spinal cord; a partial tear of his dura (the membrane surrounding the spinal cord); a completely dislocated and broken up vertebrae; broken facet

bones and broken laminar bones.

44.     When Mr. Gonzalez was released from the hospital he was on a ventilator and was completely paralyzed from his chest down. His family was forced to take care of his every need. This photograph shows the condition of Mr. Gonzalez immediately prior to his release:



45.     During the following weeks Mr. Gonzalez suffered multiple complications arising from his injuries. He was hospitalized or sent to the emergency room on multiple occasions. Ultimately, on or about July 8, 2020, Mr. Gonzalez suffered a heart attack and died on July 15, 2020. Jorge Gonzalez's cause of death was listed as acute on chronic respiratory failure. Mr. Gonzalez's death was the direct consequences of the injures caused by  and the lack of medical care by these Defendants.

**IV.**
**CLAIMS FOR RELIEF**

**COUNT I**

14

**42 U.S.C.S. § 1983**
**Fourth Amendment**

46.      The allegations contained in Paragraphs 14 through 45 are herein incorporated by reference, the same as if fully set forth verbatim for any and all purposes of this pleading.

47.      The Civil Rights Act of 1871, now codified as  42 U.S.C.S. § 1983 as federal law, provides:  "Every person who, under color of any statute, ordinance, regulation, custom or usage, of any state or territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or any other person within the jurisdiction thereof to the deprivation of any laws, privileges or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress." 42 U.S.C.S. § 1983.

48.      The state action requirement for standing under 42 U.S.C.S. § 1983 has more commonly been referred to as "color of state law," from the statute itself. When committing said acts and/or omissions, Defendants Hidalgo County Sheriff Deputies were acting under color of state law within their employment with  Hidalgo County, Texas and/or Hidalgo County Sheriff's Office.

49.      Defendants Farias, Cabrera and Trevino, acting under color of state law, violated decedent Jorge Gonzalez's Fourth Amendment rights. The rights, privileges, and immunities secured by the Fourth Amendment of the Constitution, and incorporated and applied to the states through the Fourteenth Amendment, include the right to be free from an unreasonable seizure. These rights were violated when the Defendant Deputies used excessive force as described herein. Despite Mr. Gonzalez posing no risk of harm to himself or others, they initiated an arrest, and in the course of that arrest, used tasers and physical violence sufficient to crush his neck rendering him paralyzed. There was no need to use force, yet, these officers collectively

15

either directed that it be used or participated in it. Thereafter, these Deputy Defendants exhibited deliberate indifference and failed to assure that Mr. Gonzalez was given proper medical care to Jorge Gonzalez while he was in their custody. Despite his obvious need for medical attention and distress and despite their knowledge of the force they used which created obvious injuries giving rise to a substantial risk of serious harm, these Deputies failed to provide any medical aid, failed to take him to be medically evaluated and instead simply took him to jail.   Their failures amount to a deliberate indifference to provide the required care.

50.     Further, the actions of the jail staff, including Defendant Marco Guerrero, LVN Mancha and LVN Rodriguez, violated the rights of Mr. Gonzalez under the Fourth Amendment. They failed to have him medically evaluated upon his booking. They conducted a suicide evaluation and yet ignored his obvious physical injuries and the substantial risk of harm arising from those injuries. They held his head up during his booking and photographed his obvious injuries but failed to provide him with any medical attention. They threw him into a cell and left him without any care or medical evaluation for twenty-one (21) plus hours while his condition worsened.  On multiple and repeated instances, despite their knowledge of a substantial risk of serious harm, they acted with a deliberate indifference to the urgent medical needs of Mr. Gonzalez.

51.     The Defendants acted willfully, deliberately, maliciously and/or with reckless disregard to Jorge Gonzalez's Fourth Amendment rights which directly and proximately caused decedent's injuries, and ultimately his death and the Plaintiffs' damages.


**COUNT II**
**42 U.S.C.S. § 1983**
**Fourteenth Amendment**

16

52.     The allegations contained in Paragraphs 13 through 45 are herein incorporated by reference, the same as if fully set forth verbatim for any and all purposes of this pleading.

53.     The Civil Rights Act of 1871, now codified as  42 U.S.C.S. § 1983 as federal law, provides: "Every person who, under color of any statute, ordinance, regulation, custom or usage, of any state or territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or any other person within the jurisdiction thereof to the deprivation of any laws, privileges or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress." 42 U.S.C.S. § 1983.

54.     The state action requirement for standing under 42 U.S.C.S. § 1983 has more commonly been referred to as "color of state law," from the statute itself. When committing said acts and/or omissions, Defendant Deputies were acting under color of state law within their employment with Hidalgo County, Texas and/or Hidalgo County Sheriff's Office.

55.     Defendants, acting under color of state law, violated decedent Jorge Gonzalez's Fourteenth Amendment rights. At the time of the use of excessive force and his injuries, Mr. Gonzalez was not convicted, but was under the control and custody of the Hidalgo County Sheriff's office and these deputies. He had been handcuffed and shackled and placed in a patrol car against his will and with no right to leave. The rights, privileges, and immunities secured by the Fourteenth Amendment of the  Constitution,  applying those rights to  the  states,  prohibit excessive force and require them to provide adequate medical care to individuals which are in custody of a governmental entity. The acts, omissions and continued course of conduct set forth above, describing how Jorge Gonzalez was denied adequate medical health care, are reiterated

and incorporated here by reference. These rights were violated when the Defendant Deputies Farias, Cabrera and Trevino used excessive force, namely, excessive tazing and physical violence on Jorge Gonzalez. Additionally, Defendant Deputies Farias, Cabrera, Trevino and Defendant Guerrero showed deliberate indifference to his medical needs and failed to render proper medical care to Jorge Gonzalez while he was in their custody despite their knowledge of the substantial risk of harm due to his obvious injuries, which ultimately led to his paralysis and death. In this regard the Plaintiffs would specifically allege that these Deputy Defendants had subjective knowledge of the serious medical needs of the Plaintiff and the distress he was under; they understood the harm that would come to Mr. Gonzalez if they failed to address those needs and yet with this subjective understanding they intentionally brought him to the jail without seeing that he was medically evaluated, thus, failing to address those needs indicating that they were acting with deliberate indifference.

56.    These Defendant Deputies, the jail detention officers and the LVNs had the duty to provide for Jorge Gonzalez's serious medical needs, including the need for medical treatment after he was physically injured at their hands.  This deliberate indifference continued when Mr. Gonzalez was placed in the Adult Detention Center as described herein.

57.    These Defendants ignored Mr. Gonzalez's obvious distress and his medical needs. Defendants' conduct, in ignoring the substantial risk of harm arising from his obvious injuries as described herein, demonstrates a deliberate indifference for Jorge Gonzalez and other custodial individuals and inmates, and is the kind of arbitrariness and abuse of power that constitutes a denial of the due process rights of Jorge Gonzalez and other custodial individuals with serious health conditions. Defendants' deliberate and systematic denial of such serious and critical

18

medical needs constitutes     cruel     and     unusual     punishment     in     violation     of
the Fourteenth Amendment of the Constitution of the United States.

**COUNT III**
**LVNS**

58.     The allegations contained in Paragraphs 13 through 45 are herein incorporated by
reference, the same as if fully set forth verbatim for any and all purposes of this pleading.

59.     The Defendant LVNs Mancha and Rodriguez were employees of Hidalgo County
at the time of this incident. Pursuant to Hidalgo County policy they were the medical staff on
the scene, without a registered nurse or a physician, to provide medical care and evaluation to
hundreds of inmates (sometimes as the only person on shift at the time). This medical care
included the evaluation of inmates that were to be placed in restraint chairs and to respond to
the medical needs of the inmates.

60.     Both Defendant Mancha and Rodriguez were aware of the serious injuries
suffered by Mr. Gonzalez as described herein and yet they failed to provide him with his
constitutional right to proper medical care during his time of confinement. With conscious
indifference they ignored his cries of pain, his statements that he was "f***ked up", that his
neck hurt, that he could not move his legs and that he was paralyzed.  They performed cursory
evaluations limited to the Hidalgo County policy when he was placed in the restraint chair to
only look for the tightness of his restraints on his wrists. They allowed him to be placed in the
restraint chair for over 6 hours without providing him medical care. They knew he could not
stand up for his shower and complained that his legs were weak yet they failed to provide him
any medical care, send him for medical evaluation or provide any assistance. They knew he
complained of being in pain and provided him no care and failed to send him out for medical
evaluation. Instead, they authorized him to be placed in a holding cell where he stayed for over

19

11 hours and they never checked on him.

61.     These Defendants ignored Mr. Gonzalez's obvious distress and his medical needs. Defendants' conduct, in ignoring the substantial risk of harm arising from his obvious injuries as described herein, demonstrates a deliberate indifference for Jorge Gonzalez and other custodial individuals and inmates, and is the kind of arbitrariness and abuse of power that constitutes a denial of the due process rights of Jorge Gonzalez and other custodial individuals with serious health conditions. Defendants' deliberate and systematic denial of such serious and critical medical needs constitutes cruel and unusual punishment in violation of the Fourteenth Amendment of the Constitution of the United States.

### COUNT IV
### HIDALGO COUNTY

62.     The allegations contained in Paragraphs 13 through 45 are herein incorporated by reference, the same as if fully set forth verbatim for any and all purposes of this pleading.

63.     At all times the individual defendants were acting in accordance with the policies and procedures of Hidalgo County through its Sheriff Department. Their actions were ratified by their superiors. They were cleared by internal affairs finding no policy violation.

64.     These policies and procedures were established or adopted by the highest ranking policy maker in the county that makes the policies of the Sheriff Department, Sheriff J.E. "Eddie" Guerra. These policies violate the constitutional rights of Mr. Gonzalez and those individuals in similar circumstances. These policies invite excessive force to be used against those getting arrested and to the deliberate indifference to the medical needs of those in custody, including Mr. Gonzalez. To the extent that these were not official policies, they were the accepted practice of the department and were ratified by those in policymaking position

65.     These unconstitutional policies and accepted practices include:

20

a. Allowing the use of force including a tazer for passive resistance to arrest when there is no threat to the officers or anyone else;

b. Failing to have working body cams on the deputies during an arrest;

c. Failing to transport an arrestee to a medical facility instead of the jail following an altercation with the police including one where the inmate was tazed and complaining of injuries;

d. Failing to transport an inmate for medical evaluation instead of directly to the jail unless the inmate specifically requests medical treatment;

e.   Having a policy or recognized practice in place allowed a person to be placed in the jail without   requiring a deputy to inform detention officers at the jail that an arrested individual had been involved in a struggle with the deputies and had complained of injuries;

f.   Having a policy or recognized practice in place that allowed a person to be placed in the jail without requiring detention officers to make inquires of deputies regarding any potential injuries after knowing that the arrestee was involved in an altercation with deputies;

g.   Having a policy or recognized practice that allowed a person to be placed in a detox cell for hours without a full medical evaluation;

h.   Having a policy or recognized practice that limited the LVN evaluation when a person is placed in a restraint chair to determine if the restraints were too tight and not a full medical evaluation for injuries;

i.   Having a policy or recognized practice in place that gave detention officers and supervisors with no medical training to ignore  a person's complaints of injury or pain and not send that person for medical evaluation or treatment;

j. Staffing the jail with LVNs instead of more qualified medical personnel to evaluate potential injuries to inmates;

k. Having a policy or recognized practice that allowed LVNs to diagnose a person's injuries or medical condition when their license prohibited them from doing so;

l. Having the policy or recognized practice that provided for detention officers, instead of trained medical personnel, to check on inmates who are being held in custody after they complained of serious injuries;

m. Having a policy or recognized practice that allowed for an inmate to be placed in a restraint chair for multiple hours without a medical evaluation even

after that inmate complained of severe injuries, complained of being in pain, vomited upon themselves and was unable to stand;

n. Having a policy or recognized practice that allowed detention officers who were observing an inmate on a 30 minute observation watch to limit those observations to looking through a window on a door and then not report to anyone obvious signs of injury or distress including that the inmate had not moved for hours and did not touch their food.

66.     All of these policies and recognized practices were in violation of the constitutional rights of the inmates of the Hidalgo County jail. They were either established by the highest-ranking policy maker for the jail or were ratified by the policy maker as a standard and accepted practice of the jail. These policies and practices led to the injuries and ultimate death of Mr. Zuniga Gonzalez.

**V.**
**DAMAGES**

67.     The allegations contained in Paragraphs 13 through 66 are herein incorporated by reference, the same as if fully set forth verbatim for any and all purposes of this pleading.

68.     Plaintiffs are statutory beneficiaries and/or a representative of the deceased Jorge Gonzalez and bring this suit for damages suffered and sustained by the decedent, Jorge Gonzalez, pursuant to Sections 71.002 et seq. and 71.021 et seq. of the Texas Civil Practice and Remedies Code.

69.     Plaintiffs seek damages for the following:

1)    conscious pain, suffering and mental anguish that decedent suffered prior to his death;
2)    reasonable and necessary medical expenses incurred as a result of Jorge Gonzalez's injuries leading to his wrongful death;
3)    reasonable and necessary funeral and burial expenses incurred as a result of Jorge Gonzalez's wrongful death;
4)    the past and future loss of support arising from the death of Jorge Gonzalez;
5)    loss of consortium;
6)    loss of inheritance;
7)    severe mental anguish that Plaintiffs have suffered and will, in reasonable

probability, continue to suffer in the future; and

8)    the past and future loss of companionship and society arising from the death of Jorge Gonzalez.

70.    In addition, Plaintiffs pray for punitive damages against all individual Defendants. Punitive damages are designed to punish and deter persons such as Defendants who have engaged in egregious wrongdoing. Punitive damages may be assessed under § 1983 when a Defendant's conduct is shown to be motivated by evil motive or intent, or when it involves reckless or callous indifference to the federally-protected rights of others. While municipal defendants are absolutely immune from §1983 awards of punitive damages, such damages may be awarded against a public employee or official in their individual capacity. Therefore, Plaintiffs allege and pray for punitive damages against the individual Defendants Hidalgo County Sheriff Deputies and other personnel named herein, as such Defendants actually knew that their conduct was unconstitutional, and/or was callously indifferent to its legality.

71.    Plaintiffs seek recovery for these actual damages and exemplary damages within the jurisdictional limits of the court.

## VI.
## ATTORNEYS FEES

72.    Pursuant to the Civil Rights Attorney's Fees Award Act, 42 U.S.C.S. § 1988, a prevailing party in a § 1983 case is entitled to recover his or her attorney's fees. Hence, Plaintiffs further pray for all costs and attorney fees associated with bringing the present case to trial.

## VII.
## DEMAND FOR JURY TRIAL

73.    Plaintiffs hereby make their demand for a jury trial and acknowledges herein the payment on this date of the required jury fee.

## VIII.
## PRAYER

WHEREFORE, premises considered, Plaintiffs hereby request and pray that Defendants be cited to appear and answer herein and that upon final hearing Plaintiffs have and recover from the Defendants their actual damages, exemplary damages, attorney's fees, prejudgment and post judgment interest as allowed by law, court costs and other and further relief to which Plaintiffs may show themselves to be justly entitled.

LAW OFFICES OF THOMAS J. HENRY
521 Starr Street
Corpus Christi, Texas 78401
Phone: (361)-985-0600
Fax: (361)-985-0601

By: _____
    Thomas J. Henry
    SBN: 09484210
    Robert P. Wilson
    SBN: 21718575
    Rwilson-svc@thomasjhenrylaw.com
    Attorney-in-Charge for Plaintiffs
ATTORNEYS FOR PLAINTIFFS

*service by email to these addresses only

## CERTIFICATE OF SERVICE

I do hereby certify that a true and correct copy of the above and foregoing pleading has been served on all counsel of record on this the 21st day of June, 2023 via ECF electronic notice in compliance with Rule 5 of the Federal Rules of Civil Procedure and paragraph 9 of the Southern District of Texas's Administrative Procedures for Electronic Filing in Civil and Criminal Cases by notice of Electronic Filing in accordance with the Federal Rules of Civil Procedure.

Attorney David Willis
DAVID WILLIS, PC
1534 E. 6th Street, Suite 201
Brownsville, Texas 78520
*Attorney for Defendant Steven Farias*

Marissa Carranza Hernandez
MARISSA ANNA CARRANZA HERNANDEZ, ATTORNEY AT LAW, PLLC
104 West Polk Avenue
Pharr, TX 78577
Telephone: (956) 386-9733
marissa@machattorney.com **&** sylvia@machattorney.com
***Attorney for Defendant Marco Guerrero***

Michael McGurk
Walsh McGurk Cordova Nixon, PLLC
1506 S. Lone Star Way, Ste. 10
Edinburg, Texas 78539
mmcgurk@wmcnlaw.com
Telephone: (956) 632-5030
***Attorney for Defendant Julio Trevino***

Raymond L. Thomas
RAYMOND THOMAS, P.C.
4900-B North 10th Street
McAllen, Texas 78504
rthomas@raythomaspc.com
p. 956.632.5033
***Attorney for Defendant Jorge Cabrera***

ALEJANDRO GUERRA
1510 N. 10th Street, Suite A
McAllen, Texas 78501
Tel. (956) 630-0291
***Attorney for Plaintiff Jorge Luis Gonzalez Soto***

_____
ROBERT P. WILSON